The opinion of the Court was delivered by
Glover, J.
The 16th sec. of the Act under which the defendant is indicted, authorises the Ordinary to issue process, as for a contempt, against any one who having in his possession the will of a deceased person has neglected to produce it for probate. If the possession of the will be traced to him, at any time before the service of citation by the Ordinary, he must produce it or give some satisfactory account of its loss or destruction. In this ease it is not necessary to inquire or determine, whether the provisions of the Act apply where one, to whose possession a will is traced, has destroyed it before citation is served to produce it.
A party cannot justify or excuse himself before the Ordinary for his neglect to produce the will by showing, that since the citation was served, he had voluntarily put it out of his power to produce it, nor can such a defence, which would only aggravate what the law declares to be a high misdemeanor, protect him against an indictment alleging his continued refusal to produce it.
The pertinent inquiry is not, whether the Ordinary has exhausted all the power vested in him by the Act, but whether the party having possession of the will, has neglected to produce it; and if he still neglect after citation, it constitutes that continued refusal upon which he shall be liable to indictment. Otherwise the awkward course of events, so forcibly pointed out by the presiding Judge would necessarily follow.
When an offence is created by statute it is sufficient that *364 such facts as bring the case within the provisions of the statute are set out in the indictment. The deferydant’s possession of the will, his neglect to produce it for probate, and his continued refusal are alleged in the last.count of the indictment, and these not only constitute the facts necessary to be set out, but they describe the offence and bring the defendant within all the material words of the Act.
But the defendant also submits, in arrest of judgment, that two of the three counts in the indictment “ contain no charges that constitute any offence under the Act of 1839.” In the case of the State vs. Poole, (2 Tread. 494.) decided in 1814, there were- two counts, one of which was bad, and the jury found a general verdict. On a motion to arrest the judgment the Court held, that a general verdict is good where there is one good count to which the evidence applies; and in 1847, [State vs. Anderson, 1 Strob. 459,) Evans, J., says, that this case has been followed ever since. Such has been the rule in this State not only in criminal but in civil actions. [Spann vs. Perry, 3 Strob. 341; McCoy vs. Phillips, 4 Rich. 466,) and the same rule has been pursued in the Court of the United States, and of most of the States of the Union, [U. S. vs. Fierlong, 5 Wheaton, 184; Commonwealth vs. Holmes, 17 Mass. 336; Kane vs. People, 3 Wend. 363; Commonwealth vs. McKisson, 8 Sergt. & R. 420; Miller vs. State, 5 How. Miss. R. 250.) In Virginia a different rule has been obtained in penitentiary crimes. [Mowbray vs. Commonwealth, 11 Leigh, 643.) Where there are several counts alleging offences to which different punishments are applicable, and some are bad, a new trial will be granted to ascertain the sense of the jury, but even in such cases the judgment will not be arrested. (The State vs. Montague, 2 McC. 257; and the State vs. Posey, 7 Rich. 484.)
The practice in England, in criminal cases, until lately was similar to that adopted in this State. Speaking in reference to civil cases, Lord Mansfield says: “ It has always struck me *365 that the rule would have been much more proper to have said, that if there is any one count to support the verdict it shall stand good, notwithstanding all the rest are bad. In criminal cases the rule is so.” (Peak vs. Oldham, 1 Cow. 275.) Such was the practice in England until 1844, when the case of Queen vs. Daniel O’Connel & al. (9 Jurist, 30,) came before the High Court of Parliament, on a writ of error to reverse the judgment of the Court below. Erom its political complexion and the division in the Court, the authority of that case has already been called in question, (Irvine vs. Douglass 3 Eng. L. & E. Rep. 23,) and the arguments urged in support of the decision do not satisfy us that a change of the rule, so long acted upon, is either necessary or proper. We are therefore of opinion that no sufficient cause has been shown to arrest the judgment.
What has been said in answer to the motion in arrest of judgment will apply to several of the grounds taken for a new trial. The third ground in support of the motion in arrest of judgment was also urged for a new trial and reliance was placed on the case of the State vs. Anderson, (1 Strob. 455,) and the case of the State vs. Posey, (7 Rich. 484.) They do not, however, present the same question nor do they sustain the position taken here. In the former case both counts were intended to embrace the same transaction; the second count was defective and there was a general finding of guilty. The Court refused to arrest the judgment, but ordered a new trial, not because there was one good and one bad count, but because the good count covered offences for which different punishments were provided by the Acts of 1817 and 1834. In Posey's case it was held, that a new trial will be granted, where it is necessary to ascertain the sense of the jury, and where the verdict furnishes no guide to measure the punishment, and such was the ruling in the State vs. Montague. Applying the evidence in this case to the third count of the indictment, the sense of the jury is ascertained and the Court will find no difficulty in awarding the proper punishment on such a verdict.
*366 The finding of the jury, under a charge from the presiding Judge on the facts, which this Court approves, is an answer to the remaining grounds in support of the motion for a new trial.
Motion dismissed.
O’Nball, Wardlaw, Withers, Whitner, and Munro, JJ., concurred.

Motion dismissed.