## Moore, Appellant, *v.* Pittsburgh School District et al.

Argued March 21, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, BARNES and PATTERSON, JJ.

*Mahlon E. Lewis,* with him *Harold R. Schmidt* and *Stewart & Lewis,* for appellant.

*John G. Buchanan,* with him *David B. Buerger, N. R. Criss* and *Smith, Buchanan & Ingersoll,* for appellees.

OPINION BY MR. CHIEF JUSTICE SCHAFFER, May 6, 1940;

This bill in equity brought by a taxpayer and resident in the school district of the City of Pittsburgh seeks an injunction restraining the levy and collection of the school tax of 12¼ mills for the year 1939. The basis for the relief asked is the alleged unconstitutionality of the Acts of December 1, 1938, P. L. 103,[1] under

---

[1] "In all school districts of the first class, the school taxes for the following fiscal year shall be levied annually, by the board of school directors thereof, on or after the second Monday of November and before the first Monday of December following.

"The board of school directors thereof shall annually levy a tax on each dollar of the total assessments of all property assessed and certified for taxation in said district, which said tax shall be ascertained, determined, and fixed by adding together the following:

"(a) An amount which, with all moneys received from the Commonwealth applicable thereto, shall be sufficient to pay the minimum salaries and increments of the teaching and supervisory staff thereof as fixed and provided by law and to pay the contributions of said district to the teachers' retirement system.

"Provided, however, That for the purpose of computing the amount required to pay the minimum salaries and increments fixed by law, but without otherwise limiting the rights of the district to employ teachers or other employes, the number of teachers on the salary schedule of the elementary schools shall not exceed one for every thirty-two pupils in average daily attendance in such schools, the number of teachers on the salary schedule of the junior high schools shall not exceed one for every twenty-five pu-

which the tax is levied, and June 20, 1939, P. L. 478, 24 PS sec. 578, purporting to validate the levy. Preliminary objections to the bill were filed and after ar-

---

pils in average daily attendance in such schools, the number of teachers on the salary schedule of the senior high schools shall not exceed one for every twenty-five pupils in average daily attendance in such schools.

"The number of principals in the elementary schools shall not exceed one for every six hundred pupils in average daily attendance in such schools, and the number of principals in the junior and senior high schools shall not exceed one for every twelve hundred pupils in average daily attendance in such schools.

"The number of supervisors in all schools shall not exceed one for every fifteen hundred pupils in average daily attendance.

"The number of attendance officers and home and school visitors shall not exceed one for every two thousand pupils in average daily attendance in all elementary and secondary schools.

"In all adult and extension school classes, the number of teachers shall not exceed one for every twenty pupils in average daily attendance in such schools.

"Average daily attendance, as used herein, shall be based upon attendance during the preceding school term.

"(b) An amount sufficient to pay the interest on, and retire at maturity the principal of, the indebtedness of said district [at maturity] incurred as authorized by law.

"(c) An amount sufficient to pay all other expenses and requirements of said school district, which amount [for the tax years one thousand nine hundred and thirty and one thousand nine hundred and thirty-one shall be equivalent to not less than two and three-quarter, nor more than three and one-quarter, mills on the dollar of the total assessment of all property assessed and certified for taxation therein; and for the tax year one thousand nine hundred and thirty-two and thereafter, an amount which] shall be equivalent to not less than three, nor more than three and one-half, mills on the dollar of the total assessment of all property assessed and certified for taxation therein.

"Provided, however, That no school district of the first class shall levy a tax, for the fiscal year of one thousand nine hundred and thirty-nine, in excess of one mill over the one thousand nine hundred and thirty-eight tax levy in said school district: Provided, That thereafter no school district of the first class shall levy a tax in excess of its one thousand nine hundred and thirty-eight tax levy."

gument the court below dismissed the proceeding. Plaintiff's appeal is before us.

The school districts of Philadelphia and Pittsburgh are in the first class of school districts. They are the only members of that class. Their school boards are appointed by the courts, not elected by the people. In *Wilson v. Phila. School Dist.*, 328 Pa. 225, 195 A. 90, we determined that first class school boards being appointive cannot levy taxes, and that section 524 of the School Code of May 18, 1911, P. L. 309, as amended by the Act of March 12, 1929, P. L. 20, 24 PS Sec. 562, improperly delegated to them the power to do so.

The first act we are called upon to consider, that of 1938, was passed to meet the situation created by our decision. The argument advanced is that it does not do so and is unconstitutional because it too delegates to a non-elective body the right to levy taxes in violation of article III, section 20, of our Constitution: "The General Assembly shall not delegate to any special commission . . . any power . . . to levy taxes . . .."

The main premise of the argument against the 1938 Act is that it permits too much discretion in the boards of public education in school districts of the first class in setting the tax rate. It is said that this discretion exists in the fixing of the amounts of the teachers' salaries. The minimum salaries and increments which can be charged to the levy, however, are fixed by law under the School Code, Sec. 1210, as amended, 24 PS Secs. 1164-1167. We recognized this in the Wilson case and did not consider it as rendering the prior act unconstitutional. As we there pointed out, the defect was due to the discretion of the boards in fixing the number of teachers, which in the 1938 statute is legislatively fixed at a maximum. We said in the Wilson decision (p. 235): "The amount of the tax to be levied under subsection (a) is variable. Although the salaries of teachers and members of the staff are fixed by law, the law does not fix the number of such employees. That

.is left to the judgment and discretion of the school directors." It was upon that ground that we determined unconstitutionality. That feature is out of the 1938 Act. The maximum number is fixed by it. It is said by appellant that the difference in minimum salary to junior high school teachers might be $50 per annum and upon the supposititious idea that there might be 1,000 such teachers, there would be an expenditure of $50,000 within the board's discretion. It is contended, also supposititiously, that there might be 2,000 high school teachers, as to whom there might be a difference in minimum salary of $400 per annum, making a total of $800,000. Other illustrations where the school board is given discretion in fixing the basis for the tax under subsections a, b and c of Section 524 are pointed out by appellant. In each of these instances, however, a limit is placed upon the power of the board, in the case of salary payments by the sections of the School Code which fix the maximum-minimum salaries of teachers and in other instances by the terms of Section 524. The complete answer, however, to this phase of appellant's argument is that the maximum tax rate is not fixed by the schoool board but by the legislature. We pointed out in the Wilson case that where "the legislature had fixed the maximum limit" of the tax there was no unlawful delegation of power to the school board. As the State's agency to operate the schools, it could collect less than the full amount authorized by the legislature but not more. The act provides in Section 1 that the district shall not levy a tax for the fiscal year 1939 in excess of one mill over the 1938 levy, which was 11¼ mills. The levy for 1939 is 12¼ mills, which is the amount the legislature fixed. The proposition that there is no unlawful delegation of the legislative power to tax where the legislature has fixed the maximum limit of the tax is settled by our decision in *Minsinger v. Rau*, 236 Pa. 327, 84 A. 902, reaffirmed in the Wilson

case. In the former, section 524 of the School Code provided that the total annual tax levy in any school district of the first class should not be less than five nor more than six mills. We held (p. 332) : "The objection that under the School Code the taxing power in districts of the first class is to be exercised by non-elective boards, is more apparent than real. . . .Practically the legislature itself has fixed the tax levy at a maximum of six mills and simply leaves to its agents the privilege of collecting not less than five mills in any one year; this cannot properly be objected to as unrepublican or as an unlawful delegation of legislative power to an unrepresentative body." In reaffirming this conclusion in the Wilson case, we declared (p. 233) : "In Minsinger v. Rau, . . . the delegation of taxing power under the Act of 1911 was challenged. We there held that the legislature had the power to designate agencies for the maintenance of the common school system, and had the power to confer on them the *right to collect a tax*. The opinion of the court in considering the question of delegation to an appointive board, stated that as *the legislature had fixed the maximum limit,* there was *no* unlawful delegation of taxing power to an unrepresentative body." Section 3 of the Act of April 28, 1921, P. L. 328, amended section 524 of the School Code which was before us in the Minsinger case, by striking out the maximum limit in mills, and substituting a tax to be levied in the discretion of the school board. It was this we condemned in the Wilson case. We conclude that the Act of 1938 in the respect discussed is constitutional.

Philadelphia and Pittsburgh are in the same class of school districts. The act provides in effect for a levy of $10\frac{1}{4}$ mills in Philadelphia[2] and $12\frac{1}{4}$ mills in Pittsburgh. It is argued that this is not uniformity under

---

[2] The 1938 rate in Philadelphia was $9\frac{1}{4}$ mills.

Article IX, section 1, of the Constitution, which provides: "All taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax." Sticking in the bark of the words used in the Constitution this might be so. But when the broader view is taken and consideration is given to what the purpose of the basic law is, it becomes obvious that its provision is not violated. As applied to municipal territorial divisions of the State, it was intended to make uniform the taxes which persons living within any territorial division of the Commonwealth shall be required to pay to support that territorial division. Territorially Philadelphia and Pittsburgh are separate units and the taxable persons in each unit will pay the same tax, a maximum millage of 10¼ in Philadelphia and 12¼ in Pittsburgh. Uniformity of taxations means "equality of tax burden": *Com. ex rel. v. A. Overholt & Co., Inc.,* 331 Pa. 182, 200 A. 849; *Kelley v. Kalodner,* 320 Pa. 180, 181 A. 598; that is to say equality territorially. The State levies the tax within the territorial limits of the two cities, each of which comprise a separate school district. The Constitution does not say that taxes shall be uniform as to classes of municipal divisions of the State, but uniform territorially as the State is divided territorially into cities, counties, townships and school districts. In *Poor District Case (No. 1),* 329 Pa. 390, 197 A. 334, where the county commissioners levied the tax for the separate poor districts, it was said (p. 408) : "In some cases, it is true, a single county contains a number of old poor districts, the outstanding obligations of which will vary in amount and require different rates of tax. Nevertheless, the old district, not the county, will comprise 'the territorial limits of the authority levying the tax.' " We all know as a matter of fact that taxes are not uniform in the different school districts comprising a class and never have been. They are bound to be different because of varying local conditions. Under Minsinger v. Rau,

there could have been a different tax in Philadelphia from that in Pittsburgh, the one could have been the maximum impost of six mills and the other the minimum of five. We conclude that the uniformity article of the Constitution is not violated.

It is our understanding of appellant's position that the attack upon the validating Act of June 20, 1939, P. L. 478, 24 PS Sec. 578, is based upon the assumption that the Act of 1938 is unconstitutional. As we have determined that it is not, no discussion of the constitutionality of this act is required.

Decree affirmed at appellant's cost.

As to the question of uniformity of taxation, MR. JUS-TICE STERN concurs in the result.