## Peters v. Parkhouse

*Vincent A. Cirillo*, for plaintiff.

*Roger B. Reynolds*, for defendant.

FORREST, P. J., February 26, 1965. — The matter presently before this court arises by virtue of defendants' preliminary objections to the complaint in equity filed by plaintiff, Frederick C. Peters. In that complaint, plaintiff seeks to enjoin the Montgomery County Commissioners and the appointed Trustees of the Montgomery County Community College from proceeding any further in their attempt to establish a Community College, and asks this court to determine that the Community College Act of August 24, 1963, P. L. 1132, sec. 1 et seq., 24 PS §5201, et seq. is unconstitutional. Defendants filed preliminary objections in the nature of a demurrer to this complaint, seeking a speedy adjudication of the matter of constitutionality. Leo C. Boyle filed a similar complaint against the same defendants as a friendly taxpayer, seeking to expedite

the hearing of this matter. These two actions were argued at the same time as companion cases and are both fully treated in this opinion.

Plaintiffs' basis of unconstitutionality is that this act violates article III, sec. 20, of the Pennsylvania Constitution because it is an unlawful delegation of legislative power to a nonelective body. More particularly, plaintiffs suggest that section 6 (b) of the Community College Act gives the Board of Trustees of the Community College the unlimited power to bind the local sponsor to any expenditure which it undertakes in behalf of the institution. Although both parties agree that the board of trustees would undoubtedly act in good faith, the act still presents the possibility of abuse in the future. Article III, sec. 20, of the Pennsylvania Constitution states that:

"The General Assembly shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement, money, property or effects, whether held in trust or otherwise, or to levy taxes or perform any municipal function whatever."

Section 6 (b) of the Community College Act of 1963, provides that:

"(b) Contracts shall be entered into and other acts shall be done by the board of trustees of a community college in the name of the community college and shall be binding upon the local sponsor. All property purchased by or granted to the board of trustees of a community college shall be held in the name of the college on behalf of the local sponsor of the college."

The purpose of article III, sec. 20, of the Pennsylvania Constitution was to prevent the separation of the power to incur debts from the power to obtain funds to satisfy those debts. As stated in the case of Tranter v. Allegheny Co. Authority, 316 Pa. 65 (1934), at page 78:

"By 1873, when the convention was engaged in preparing the constitution, public opinion had recognized the economic mistake of taking from municipalities certain powers and conferring them on independent commissions, while, at the same time, requiring the municipality to pay the bills incurred by the commission without any restraining voice in the expenditure. The separation of the power to incur debts from the duty of providing for their payment by taxation, produced the principal mischief complained of and which it was sought to prevent."

See also Poor District Case (No. 1), 329 Pa. 390, 404 (1938); Wilson v. Philadelphia School District, 328 Pa. 225, 240-41 (1937).

The prohibition of article III, sec. 20, supra, is that no "special commission, private corporation or association" shall be delegated the power ". . . to levy taxes or perform any municipal function whatever". The cases interpreting this provision of the Constitution have distinguished two different types of nonlegislative agencies, municipal authorities and school boards. In the case of Wilson v. Philadelphia School District, supra, the court recognized this distinction at pages 229-30, where it states:

"The taxing power, one of the highest prerogatives, if not the highest, of the legislature, must be exercised through representatives chosen by the people. It is clearly within the interdiction of this principle of constitutional government against delegation. True, in this state, and in many others, the power to tax has been delegated to and exercised by smaller units of state government, such as municipal bodies chosen by the people. See Sharpless v. Philadelphia, supra. For while the principle of non-delegation of taxing power is the general rule, delegation to municipal authorities has been recognized as lawful: Butler's Appeal, and City of Erie v. Reed, supra; Durach's Appeal, 62 Pa.

491 . . . This is an exception to the general rule, but such delegation is kept within defined lines, with supervisory control always vested in elective bodies . . .

"There is no such historical basis to support conferring the taxing power on a school district."

School boards, on the other hand, have been treated as agencies of the State legislature and have been determined not to possess attributes of municipalities. In the case of Evans v. West Norriton Township Municipal Authority, 370 Pa. 150, 157 (1952), the court said:

"Furthermore, the analogous (so-called) 'School Board cases' uphold the constitutionality of acts which authorize school boards, school districts or similar bodies to administer schools and the school systems, and to impose and collect a tax *if the legislature* (or the duly elected public officials of a municipality) *fix the tax or fix a maximum ceiling or limit on the tax:* Wilson v. Philadelphia School District, 328 Pa. 225, 195 A. 90; Minsinger v. Rau, 236 Pa. 327, 84 A. 902; Moore v. Pittsburgh School District, 338 Pa. 466, 13 A. 2d 29. But no recent case has sustained the grant to an Authority (or to a school board or to any similar agency, body or instrumentality) of an unlimited right or power to levy taxes."

As to whether school boards and authorities are "special commissions" or "private corporations", as discussed in article III, sec. 20, the Evans case, supra, at pages 159-60 stated:

"While it may not be clear whether an Authority or school board or similar appointive instrumentality *with unlimited power of taxation* is a special commission or private corporation under Article III, §20 of the Constitution, it is clear from Wilson v. Philadelphia School District and other cases hereinbefore cited, that *neither the legislature nor a local elected municipal body can delegate to any appointive body the unlimited*

*power to levy taxes.* However, the right to act as agent and to perform the necessary administrative details is delegable: Moore v. Pittsburgh School District, 338 Pa. 466, 13 A. 2d 29; Wilson v. Philadelphia School District, 328 Pa., supra."

Thus, the law seems clear that a proper delegation of legislative duty is the delegation of ministerial functions of the legislature. A question arises as to how much further the legislature may go in authorizing the performance of its functions. It is obviously advantageous to permit the legislature to establish certain agencies to perform the routine operation of legislative establishments. There is a fine line between constitutional and unconstitutional delegation. To ascertain whether the legislature has unconstitutionally delegated legislative powers to the nonelective board of trustees established by the Community College Act of 1963, reference must be made to the case of Wilson v. Philadelphia School District, supra, which is the leading school board case on article III, sec. 20.

In the Wilson case, supra, the Supreme Court of Pennsylvania determined that the Act of March 12, 1929, P. L. 20, amending the School Code of May 18, 1911, P. L. 309, was unconstitutional. The act provided, inter alia, that the board of school directors of first class school districts shall levy a tax on each dollar of assessed valuation, the tax to be fixed by compiling the amount necessary, considering moneys received from the Commonwealth, which will be required to pay the minimum salaries of teachers and supervisory staff, plus amount necessary to retire indebtedness, plus amount required for other expenditures. Here, the taxing power was granted directly to the board of school directors. These directors were not elected but were judicial appointees. The objection was mainly to the fact that, although the minimum salaries of the teachers were fixed by law, the number of teachers to

be hired was within the discretion of the board. The court said, at page 237:

"But so long as the factor provided by sub-section (a) (number of teachers) is left entirely to the discretion of the school board, the entire rate equation is variable without limitation. The legislature has not under such circumstances enacted a rate, but has empowered the school board to fix it. Such was not true in the Minsinger case, and it is our considered judgment that here there is in fact an unconstitutional delegation of taxing power to an appointive board." (Parenthetical material supplied.)

The Wilson case continued to discuss the amendment to the School Code and its relationship to article III, sec. 20, as follows, at pages 240-41:

"Another objection to the Act of 1929, is that it is unconstitutional because of Article III, section 20. This section prohibits the delegation to any special commission of the legislature's power to tax. The purpose of the provision was to protect against the exercise of the taxing power by officials not subject to the control of the people . . . The section becomes an express and emphatic limitation on the power of the legislature to delegate to a non-elective board or commission the power to tax. But it is urged the school board is not a 'special commission' because at the time the legislature invested it with taxing power, it was an existing governmental body or agency, regularly constituted and exercising general administrative powers in connection with the public school system of the State. It is quite true it was such a body or agency and could lawfully exercise all the legitimate powers granted to it whether or not it is a special commission for such purposes. It is the established governmental agency for the administration of the educational system. But when the taxing power was lodged in it, it was *quoad* that power a special appointive commission. It must be remembered

that the taxing power is a separate special power, and is not a component part of the power to educate. When an appointive school board, which is a board of education, is empowered to levy taxes, it is a special commission to levy taxes."

By the Community College Act, sec. 6 (b), the board of trustees may undertake expenditures and bind the local sponsor much in the same fashion as the board of school directors would be able to manipulate the tax amount by the hiring of more teachers at the minimum rate.

It has been argued in the instant case that where the legislature has put a maximum limitation on the taxing power, this is not an unlawful delegation. In Moore v. Pittsburgh School District, 338 Pa. 466, 470 (1940), the court said:

"The proposition that there is no unlawful delegation of the legislative power to tax where the legislature has fixed the maximum limit of the tax is settled by our decision in Minsinger v. Rau, 236 Pa. 327, 84 A. 902, re-affirmed in the Wilson case."

In the instant case, the Community College Act of 1963 provides for taxation to be conducted by the local sponsor and further states a maximum to which that local sponsor may be empowered to tax. See section 10 of the Act of August 24, 1963, P. L. 1132, sec. 10, 24 PS §5210. The Moore case, if taken literally, would require this court to find the act constitutional because there is a maximum limitation on the taxing power. However, there is no provision which limits the power of the board of trustees to spend. Since the board has been given the unfettered power to bind the local sponsor, even in excess of the revenue that the sponsor can legitimately raise through taxation, this is actually tantamount to granting the board the unlimited power to tax, albeit, in a more sophisticated and complicated guise. Although the board has not been directly dele-

gated the power to tax, nevertheless, by delegation of an unlimited power to spend and bind the local sponsor, the effect is the same.

As mentioned before, the purpose of article III, sec. 20, was to prevent the separation of the power to incur debts from the power to assure their payment: Tranter v. Allegheny Co. Authority, 316 Pa. 65, 78 (1934); Wilson v. Philadelphia School District, 328 Pa. 225, 240 (1937). This court feels that the Community College Act of 1963 is unconstitutional because the legislature has unlawfully delegated to the board of trustees the power to incur debts, which are binding upon ·the county. Although the act may provide a limit on the taxing power of the local sponsors, it does not limit the board's power to incur such binding debts.

This court is not unmindful of the presumption of constitutionality of all legislative enactments, nor is it ·constrained to disregard the rule of construction that an act can be declared void only when it clearly, plainly and palpably violates the Constitution. This court feels that this act clearly, plainly and palpably "violates" the Constitution.

And now, February 26, 1965, the preliminary objections of defendants are overruled, and the injunctive relief as prayed for is granted to plaintiffs.